**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID VAUGHN GRIER,** | : | |
|    **Plaintiff,** | : | |
| | : | |
|   **v.** | : | **CIVIL ACTION NO. 26-CV-2515** |
| | : | |
| **GLOBAL TEL LINK/VIA PATH** | : | |
| **TECHNOLOGIES, CORPORATION,** *et al.*, | : | |
|    **Defendants.** | : | |

**<u>MEMORANDUM</u>**

**YOUNGE, J.**                                                                                         **JULY 13, 2026**

Plaintiff David Vaughn Grier, who is currently confined at SCI Phoenix, brings this *pro se* action against Global Tel Link Corporation ("GTL") and several of its employees, asserting claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") as well as various state law claims because he allegedly purchased a defective tablet and received a refurbished replacement that was also defective.  He asserts, *inter alia*, a breach of warranty claim because he had to pay for a replacement battery while his tablet was still under warranty. The Court will grant Grier's application to proceed *in forma pauperis* and will screen his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).  As explained below, the Court will dismiss the Complaint.

I.      FACTUAL ALLEGATIONS[1]

Grier alleges that he was sold a defective tablet, and while that tablet was replaced with a refurbished tablet, the refurbished tablet stopped working a few months later.  He also claims that he had to pay for a replacement battery even though his tablet was still under warranty.  Grier names GTL as a Defendant as well as the following GTL employees: Deb Alderson (identified in the Complaint as a "chief executive officer"); Eve Doe[2] (identified as a "chief executive officer"); Jeffery Haidinger (identified as the "president and Chief Operating Officer"); and John Does I-III (identified as the "Manager," "Tech Support 2," and "Tech Support 16," respectively).  (*See* ECF No. 2 ("Compl.") at 2-4.)  Grier avers that GTL, a corporation out of Falls Church, Virginia, supplies the Pennsylvania Department of Corrections ("DOC") with "telecommunications and . . . media products including physical devices such as tablets."  (*Id.* at 2.)

Grier purchased a tablet from GTL for $80 in June 2024.  (*Id.* at 4.)  He avers that on July 25, 2024, the tablet "became defective, failing to properly run its software."  (*Id.*)  Grier sent an electronic message to "GTL Support" on July 27, 2024, indicating that the music player on his tablet would stop working whenever he pressed pause.  (*Id.* at 13.)  He received a response with instructions to correct the issue with his tablet.  (*Id.*)  However, in August 2024, Grier sent additional messages indicating that despite the information received, the radio on his tablet

---

[1] The factual allegations set forth in this Memorandum are taken from Grier's Complaint, which consists of eleven typewritten pages (ECF No. 2 at 1-11), and twenty-seven pages of attached exhibits (*id.* at 12-38).  The Court deems the entire submission to constitute the Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system.  Where the Court quotes from *pro se* pleadings, punctuation, spelling, and capitalization errors will be cleaned up as needed for clarity.

[2] Although Grier initially identifies this Defendant as Eve Doe, he later refers to this individual as "Eve."  (Compl. at 3.)  It appears that Grier is not aware of this individual's surname.

would not work, and he requested a new device, averring that he was sold a "defective product." (*Id.* at 4, 13.)  On or about August 19, 2024, GTL arranged for the tablet to be shipped out "for testing and repairs." (*Id.* at 14.)  On October 10, 2024, Grier was informed that following an evaluation, his tablet would be "replaced under warranty." (*Id.* at 4, 14.)  Grier avers that he received a refurbished tablet. (*Id.* at 4.)

On January 21, 2025, Grier "informed GTL that the replacement tablet did not turn on and had no ability to function." (*Id.* at 5.)  He sent multiple messages to GTL Support in January 2025 indicating that his tablet would randomly shut off and not turn back on. (*Id.* at 15.)  GTL Support responded to Grier on January 31, 2025, advising him that the "original 90-day warranty period on [his] battery has expired." (*Id.*)  Grier was informed via message from "GTL Inmate Support 2" that if he wanted to purchase a new battery, Grier should "request a check for $47.00 to be paid to ViaPath," and the check and tablet would be sent to ViaPath for replacement "with a brand-new battery, which comes with a new 90-day warranty period," effective from the date of install. (*Id.*)

Grier contends that because his tablet would not power on, it was a "software issue" that was "separate from 'battery issues,'" and he maintains that his tablet was covered by GTL's supplemental warranty. (*Id.* at 5-6.)  On February 1, 2025, Grier sent a message to GLT Support, indicating that GTL was "in error" because he reported that the replacement tablet was defective 89 days after he received it, and, as such, he maintained that the tablet was still covered by warranty. (*Id.* at 16.)  In response, Grier was told that when a tablet is "replaced under warranty at [their] facility, any remaining warranty time from the previous device rolls over to the replacement device" and the "replacement device does NOT come with a new warranty." (*Id.*)  Grier was also informed that his "battery warranty expired on 09/16/2024." (*Id.*)

3

Grier sent another message on February 3, 2025, again disputing coverage under the warranty, asserting that because his tablet "has a defect," GTL did not complete its original obligation under the warranty. (*Id.*) On February 4, 2025, Grier sent another message asserting that the "software is not functioning as the device will not shut on" and that "civil litigation" would ensue if GTL did not comply. (*Id.*) GTL Inmate Support 2 responded that "[i]f the device will not turn on it is not a software issue" and that "[l]egal matters will not be discussed through support link." (*Id.*) On April 20, 2025, Grier completed an inmate request form requesting that a check be sent to the business office so he could obtain "a new tablet battery." (*Id.* at 6, 27.) On April 21, 2025, Grier was informed that his request to have his tablet shipped "for a battery replacement" was set up. (*Id.* at 17.) Grier claims, without further explanation, that his tablet was returned to him "without work being done." (*Id.* at 6.) It is unclear whether the battery in Grier's tablet was replaced.

Based on these allegations, Grier avers that Defendants John Does I-III "breached warranty/breached contract with a blanketed denial of repair." (*Id.* at 6.) He also asserts that Defendants Eve, Alderson, and Haidinger affirmed the "policy and practice of charging patrons while under warranty." (*Id.*) He alleges that GLT and its employees deprived him of property without redress, and that GTL committed theft by receiving his stolen property and also "attempted extortion by submitting the request to deprive [him] of funds." (*Id.* at 8.) Grier contends that these acts demonstrate "racketeering activity," and he further avers that GTL committed mail fraud by using the "mail and the United States Postal Service to further its scheme to defraud [him] of his property through artiface [sic], false promotion, and promises." (*Id.* at 8-9, 10.)

4

Grier contends that the "joined actions" of GTL and its employees "in procuring [his] tablet through falsity" constitutes fraud, unjust enrichment, theft by unlawful taking, theft by deception, theft by extortion, receiving stolen property, civil conspiracy, evading prosecution, breach of contract and warranty, the creation of false documents, negligence, interference with contractual relations, misrepresentation, false advertisement, violation of unfair trade practices and consumer protection laws, corrupt organization, federal mail fraud, and a RICO violation. (*Id.* at 1, 9.)  He seeks declaratory relief as well as compensatory and punitive damages in excess of one million dollars.  (*Id.* at 10-11.)

## II.    STANDARD OF REVIEW

The Court will grant Grier leave to proceed *in forma pauperis* because it appears that he is incapable of prepaying the fees to commence this civil action.[3]  Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to screen and dismiss the Complaint if it is frivolous, malicious, fails to state a claim, or seeks relief from an immune defendant.  Section 1915(e)(2)(B)(i) requires the Court to dismiss Complaint if it is frivolous, and § 1915(e)(2)(B)(ii) requires dismissal if a complaint fails to state a claim upon which relief may be granted.  A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Brown v. City of Philadelphia*, 750 F. App'x 171, 173 (3d Cir. 2018) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). The use of the term "frivolous" in § 1915 "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke*, 490 U.S. at 325.  Section 1915 accords judges "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless[,]" including claims that describe "fantastic

---

[3] However, since Grier is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

or delusional scenarios[.]"  *Id.* at 327-28; *see also Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003).  "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them."  *Smith v. N. Cambria Police,* No. 25-1273, 2025 WL 1324070, at *1 (3d Cir. May 7, 2025) (*per curiam*) (quoting *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). A claim is legally baseless if it is "based on an indisputably meritless legal theory."  *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

Whether the Complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)).  At the screening stage, the Court will accept the facts alleged in a *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint contains facts sufficient to state a plausible claim.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Additionally, the Court must review the Complaint and dismiss the matter if it determines that subject matter jurisdiction is lacking.  *See* Fed. R. Civ. P. 12(h)(3); *Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").

6

As Grier is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). However, conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue."). "[P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245); *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it b[y] name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III.    DISCUSSION

### A.    Federal Law Claims

Grier's RICO claims are legally baseless. RICO "makes it unlawful 'for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern racketeering activity.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting 18 U.S.C. § 1962(c)). To state a civil RICO claim, a plaintiff must plausibly allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (internal quotations omitted). When a plaintiff presents a fraud-based RICO claim, he "must plead with particularity the circumstances

7

of the alleged fraud." *Mierzwa v. Safe & Secure Self Storage, LLC*, 493 F. App'x 273, 276 (3d Cir. 2012) (citing Fed. R. Civ. P. 9(b)). An "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity" or a "group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "'Racketeering activity' is defined in the RICO statute to comprise the state law offenses of murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, and dealing in a controlled substance or listed chemical, as well as several federal offenses such as mail and wire fraud." *Talley v. Halpern ex rel. Est. of Winderman*, No. 05-4184, 2005 WL 2002611, at *4 (E.D. Pa. Aug. 16, 2005) (citing 18 U.S.C. § 1961(1)). "According to the RICO statute, a 'pattern of racketeering activity' requires at least two acts of racketeering activity within a ten-year period." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 363 (quoting 18 U.S.C. § 1961(5)). Additionally, a plaintiff must have sustained "injury to business or property" caused by the alleged RICO violation in order to bring a RICO claim. *Maio v. Aetna, Inc.*, 221 F.3d 472, 482-83 (3d Cir. 2000).

Grier's claims that Defendants engaged in a RICO conspiracy and committed acts of theft, extortion, and mail fraud in connection with the refurbishment and battery replacement of his electronic tablet lacks any arguable basis in law and will be dismissed as frivolous. *See Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("The claim that the defendants [including numerous judges, staff attorneys, and an assistant united states attorney] engaged in a RICO conspiracy by failing to properly address issues on appeal and 'bribing' witnesses to testify pursuant to plea agreements lacks any arguable basis in law and was properly dismissed as frivolous."); *Mierzwa v. Safe & Secure Self Storage, LLC*, 493 F. App'x 273, 276 (3d Cir. 2012)

8

("[C]onclusory allegations that defendants conspired for the purpose of defrauding [Mierzwa] are simply inadequate to plead a valid RICO claim.")

Grier alleges in conclusory fashion that Defendants committed, *inter alia*, fraud, theft by unlawful taking, deception, and extortion, a breach of contract and warranty, as well as acts of misrepresentation and false advertisement. (Compl. at 1, 9.) The claims he alleges under state law for, *inter alia*, breach of contract, breach of warranty, and fraud, are not enumerated in Section 1961, nor does he specify any factual allegation that supports a plausible inference of "racketeering activity" that poses a threat of criminal activity under the federal criminal provisions relating to enumerated frauds. *See Annulli v. Panikkar*, 200 F.3d 189, 199-200 (3rd Cir. 1999) ("Racketeering" does not include things like "garden-variety state law crimes, torts and contract breaches."), *overruled on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000); *see also Kolar v. Preferred Real Est. Invs., Inc.*, 361 F. App'x 354, 364 (3d Cir. 2010) (noting that court should not permit contract claims nor simple fraud disputes to be transformed into RICO claims).

The Complaint also fails to satisfy the requirements for a RICO conspiracy claim because Grier cannot allege an agreement to commit predicate acts when the Complaint fails to allege predicate acts in the first place, nor can he allege requisite knowledge of participants that they were part of a pattern of racketeering activity because he fails to describe such a pattern. *See Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989) (citation omitted) (to state a RICO conspiracy claim, the plaintiff "must allege (1) agreement to commit the predicate acts of fraud, and (2) knowledge that those acts were part of a pattern of racketeering activity conducted in such a way

9

as to violate [§ 1962]."").  Accordingly, the Court will dismiss Grier's RICO claims as legally

baseless, without leave to amend.[4]

**B.      State Law Claims**

The remaining claims alleged in Grier's Complaint are state law claims that sound in

contract or tort, and are, in some instances, based on violations of Pennsylvania criminal laws.[5]

However, the Complaint is most aptly interpreted as asserting breach of warranty claims.  *See*

*Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable

law, irrespective of whether a *pro se* litigant has mentioned it by name.").  Because the Court has

dismissed his federal claims, the Court will not exercise supplemental jurisdiction under 28

U.S.C. § 1367(c) over any state law claims.  Accordingly, the only independent basis for

jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction

over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive

of interest and costs, and is between . . . citizens of different States."

---

[4] Since Grier has failed to allege a legal basis for a substantive RICO claim, it follows that he lacks a legal basis for a conspiracy claim under RICO.  *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.").

[5] Courts, including the United States Court of Appeals for the Third Circuit, routinely dismiss claims seeking to impose civil liability under various sections of the Pennsylvania Crimes Code, finding that the "Code gives no authority for a private cause of action and none has been implied." *Youst v. Roth*, No. 23-0848, 2023 WL 3821813, at *4 (E.D. Pa. June 5, 2023) (quoting *Martrano v. Quizno's Franchise Co.*, No. 08-0932, 2009 WL 1704469, at *12 (W.D. Pa. June 15, 2009)); *see also Williams v. Wetzel*, 827 F. App'x 158, 162 (3d Cir. 2020) (*per curiam*) (recognizing that plaintiff's civil claims brought pursuant to the Pennsylvania Crimes Code were properly rejected by the district court because there was no private right of action available under the Code); *Abouloh v. Lehigh Cnty. Prison*, No. 25-3377, 2025 WL 2654904, at *8 (E.D. Pa. Sept. 15, 2025).

10

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,'" which "means that, unless there is some other basis for jurisdiction, no plaintiff may be a citizen of the same state as any defendant."[6] *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). It is the plaintiff's burden to establish diversity of citizenship. *Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *see also Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met).

Even assuming that the parties are diverse, Grier has failed to demonstrate that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332 (specifying that the sum or value of the matter in controversy must exceed $75,000 for diversity jurisdiction, exclusive of interest and costs). A plaintiff's good faith allegations govern whether the amount in controversy is satisfied unless it is clear to a legal certainty that the plaintiff cannot recover the amount claimed. *See, e.g., St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) ("The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless

---

[6] An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa*, LLC, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). To determine the citizenship of a corporation for purposes of diversity under § 1332, courts use the test announced by the United States Supreme Court in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). Under *Hertz*, a corporation is a citizen of its state of incorporation and its principal place of business, i.e., its "nerve center." *Id.* at 80-81. A nerve center is "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," which is typically "found at a corporation's headquarters." *Id.*

11

the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." (footnotes omitted)); *Spectacor Mgmt. Grp. v. Brown*, 131 F.3d 120, 122 (3d Cir. 1997) ("As a general rule, [the amount in controversy] is determined from the good faith allegations appearing on the face of the complaint.").

Grier's Complaint alleges two concrete dollar amounts—the cost of the tablet, $80, and the cost of the replacement battery, $47.  (Compl. at 4, 6.)  "Under Pennsylvania law the measure of damages for breach of warranty under the Uniform Commercial Code 'is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.'"  *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 402 (3d Cir. 2004) (quoting 13 Pa. Cons. Stat. § 2714(b)); *see also Marino v. Sports Auth.*, 940 F. Supp. 792, 795 (E.D. Pa. 1996) ("[A] useful objective measure of the difference in the value of the goods as is and as warranted is the cost of repair or replacement of the goods.") (citing *Cober v. Corle,* 610 A.2d 1036, 1041 (1992)).  The dollar amounts claimed by Grier are far below the jurisdictional threshold, even considering any incidental or consequential damages that may be recoverable for a breach of warranty claim.  *Id.* (citing 13 Pa. Cons. Stat. §§ 2714(c), 2715, 2A519(d)).

To the extent that Grier asserts a plausible claim under the state consumer protection laws, he could potentially recover treble damages.  *See Samuel-Bassett*, 357 F.3d at 399-400 (including potential damages under the Pennsylvania Unfair Trade Practices and Consumer Protection Law to calculate amount in controversy for diversity jurisdiction); *Suber v. Chrysler Corp.* 104 F.3d 578, 587-88 (3d Cir. 1997) (considering potential trebled damages under the New Jersey Consumer Fraud Act for amount in controversy).  On the face of this Complaint, using the

purchase price as the actual damages amount and assuming Grier would be successful on a consumer protection claim, trebled damages could result in a recovery of at most $240.

Although Grier requests the extraordinary sum of $1,300,000 in his Complaint, the measure of damages available under either a breach of warranty or violation of state consumer protection laws claim demonstrates to a legal certainty that he is unable to satisfy the $75,000 amount in controversy requirement.[7] *See Gibson v. Tip Towing & Recovery LLC*, No. 23-2919, 2024 WL 658977, at *1 n.3 (3d Cir. Feb. 16, 2024) (*per curiam*) ("Gibson alleged that the value of her roughly decade-old vehicle was $100,000, and she demanded that the defendants pay her $10,000 per day for holding it. But the District Court "ha[d] no trouble finding that such monetary demands are not made in good faith.""); *Douglas v. Joseph*, 656 F. App'x 602, 605 (3d Cir. 2016) (noting that it must appear "to a legal certainty that the plaintiff's claim is really for less than the jurisdictional amount to justify a dismissal for lack of subject matter jurisdiction"); *see also Kalick v. Nw. Airlines Corp.*, 372 F. App'x 317, 322 (3d Cir. 2010) (*per curiam*) (affirming the district court's ruling that diversity jurisdiction was lacking because plaintiff's plausible damages were well below $75,000).  The dismissal will be without prejudice to Grier refiling his state law claims in state court, where federal jurisdiction will not be an issue.[8] *See N.J. Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 241 n.8 (3d Cir. 2011) (explaining that dismissals for lack of subject matter jurisdiction are "by definition without prejudice" (citation omitted)).

---

[7] Grier seeks punitive damages.  (Compl. at 11.)  Although punitive damages "must [also] be considered in determining the amount in controversy," *see Coulter v. Paul Laurence Dunbar Cmty. Ctr.*, 685 F. App'x 161, 165 (3d Cir. 2017) (citations omitted), punitive damages are not recoverable for breach of contract or warranty claims, *see Greenwald Caterers Inc. v. Lancaster Host, LLC*, 599 F. Supp. 3d 235, 249-250 (E.D. Pa. 2022) (citations omitted).

[8] The Court expresses no opinion on the merits of any state law claims.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Grier leave to proceed *in forma pauperis* dismiss his Complaint.  The federal RICO claims will be dismissed with prejudice as legally baseless pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).  All state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.  Under the circumstances of this case, leave to amend will not be given, as amendment would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  An appropriate Order regarding dismissal follows, which shall be entered separately.  *See* Fed. R. Civ. P. 58(a).

BY THE COURT:

/s/ John Milton Younge

JOHN MILTON YOUNGE, J.

14